Allan Green, for the plaintiff.
James Zisman, for the defendant.

*Municipal Court of the City of Boston*

No. 350765

## A. S. BURG COMPANY

### v.

## RAILWAY EXPRESS AGENCY, INC.

(September 24, 1954)

*Adlow, C. J.* Action to recover for failure to deliver merchandise shipped by air express from Boston, Massachusetts to a consignee in Mexico City, Mexico.

On March 28, 1952, A. S. Burg Company delivered to the Railway Express Agency, Incorporated, in Boston, Massachusetts, a parcel for transportation by air express to a consignee in Mexico City. With the goods the shipper delivered to the carrier invoices and customs declarations to accompany the shipment and a letter of instructions for the Pan American Air-Lines. The carrier, later on the same day, notified the shipper that it could not deliver the goods by Pan American Air-Lines, and that a letter of instructions to Lamsa Airlines would be necessary. The shipper through his agent acquiesced in the change and authorized the preparation of an appropriate letter of instructions.

On April 16 and April 18, 1952, two other shipments were delivered to the carrier by the shipper for delivery to Mexico City. Each of these shipments was accompanied by a letter of instructions for Lamsa Airlines which had been prepared and signed by the shipper himself.

The carrier transported the three shipments from Boston, Massachusetts, to El Paso, Texas via the Airlines. The shipment of March 28 arrived at El Paso on March 31, 1952; that of April 16 arrived there on April 18, 1952; and that of April 18 arrived there on April 21, 1952. At El Paso, Texas, each of the parcels was carried by cart across the Rio Grande and delivered to Lamsa Airlines which loaded them into its plane for conveyance to Mexico City. The Lamsa Airlines plane landed at Torreon, Mexico,

where customs officials examined the cargo and demanded the payment of custom duties on the goods.

Lamsa Airlines paid the duty claimed by Mexican customs authorities and notified the consignee in Mexico City that the goods were being held at Torreon and would be delivered upon payment of the custom duties. The consignee claimed that the duties levied were too high because of an erroneous classification of the goods, and refused to accept delivery of the goods or to pay the duties levied. On application to custom authorities Lamsa Airlines obtained a rebate of a part of the duties on a reclassification of the goods.

Lamsa Airlines notified the shipper of the consignee's refusal to accept the shipments and the shipper notified Lamsa Airlines not to dispose of the goods in any other manner than by delivery to the consignee with whom the shipper had arranged for the acceptance of the goods. However, the consignee again rejected the shipments.

In this action the shipper seeks to recover from the Railway Express Agency, Incorporated, for the value of the merchandise involved in the three shipments. In finding for the defendant the court made the following findings of fact:

"Upon all the evidence, I find as a fact that neither the defendant nor the Lamsa Airlines, the connecting airline carrier in Mexico, in any way did anything to delay or prevent the completion of the contract of carriage entered into between the plaintiff and the defendant. I further find as a fact that neither the defendant nor Lamsa Airlines was guilty of negligence.

I rule that the stoppage in transit by the custom officials of a sovereign nation was expressly provided for in the terms of the uniform express receipts — three in number, herein sued upon."

It is unnecessary to set forth the many requests for rulings of law filed by the plaintiff with the court. It is apparent that the plaintiff bases its right to re-

cover on the theory that the defendant as the initial carrier is responsible for any failure or default with respect to the shipment on the part of the connecting carrier, or on the alternative theory that the defendant's relationship to the connecting carrier is that of principal and agent and as a consequence the defendant is responsible for the connecting carrier's failure to deliver the shipment to the consignee. Neither theory has any validity under the circumstances peculiar to this case.

While a common carrier has historically been treated as a virtual insurer of the safety of goods entrusted to his care, his right to limit his responsibility as an insurer under certain circumstances has been recognized. *Liverpool Steam Co. v. Phoenix Ins. Co.,* 129 U. S. 397. The sole restriction on this right of the carrier is that the provisions of this special contract be just and reasonable and do not exempt the carrier from responsibility for loss due to negligence. *Cox v. Central Vermont Railroad,* 170 Mass. 129, 136.

A pertinent item in the express receipt given by the defendant carrier to the shipper provides:

"12. It is hereby agreed that the property destined to such foreign countries, and assessable with foreign governmental or customs duties, taxes, or charges, may be stopped in transit in foreign ports, frontiers or depositories and there held pending examination, assessments, and payments, and such duties and charges, when advanced by the company shall become a lien on the property." An exemption from responsibility of similar tenor is noted in the tariff schedule of Lamsa Airlines. The presence of these provisions in the express receipts issued tends to limit the carrier's responsibility.

In order to fasten responsibility on the defendant carrier it is necessary to establish (1) that there was a failure to properly perform the contract of carriage in Mexico, and (2) that the defendant carrier was responsible for the conduct resulting in the default.

1. Keeping in mind that the stoppage of these shipments in Mexico was due to the intervention of Mexican customs authorities, and the further fact that both the initial carrier and the connecting carrier had expressly exonerated themselves from responsibility for delays attributable to such causes, we encounter at the outset the question whether the consequent loss to the shipper was attributable to the default or negligence of either the initial or connecting carrier. It is apparent from the record that both the consignee and the shipper were informed of the fact that Mexican customs authorities had levied duties on the shipments, that these had been paid by the connecting carrier, and that the only thing that prevented delivery of the goods to the consignee was his refusal to recognize the validity of the customs levy or to discharge the lien which the connecting carrier had on the goods for the sums advanced by it in payment of the customs duties. The right to this lien was provided for in the contract of carriage. There was ample reason for the refusal of Lamsa Airlines to deliver the goods while it continued to have such a lien.

While the report does not disclose the dates on which telegrams were sent by Lamsa Airlines to A. S. Burg Company, by A. S. Burg Company to Lamsa Airlines, and by the consignee to A. S. Burg Company, it does not appear that any serious claim was made by the shipper that there was any unreasonable delay in notifying the consignee or the shipper of the circumstances which delayed delivery. It is sufficient for our purposes to note that there was ample evidence to warrant the finding made by the court that "neither the defendant nor Lamsa Airlines was guilty of negligence."

The shipper emphasizes the familiar rule that where goods in transit are lost there is a presumption that the loss was caused by the last carrier. *Moore v. N. Y., N. H. & H. R. R. Co.*, 173 Mass. 335. *Cote v. N. Y., N. H. & H. R. R. Co.*, 182 Mass. 290. *Goodman v.*

*N. Y. N. H. & H. R. R. Co.*, 295 Mass. 330. The shipper overlooks the fact that the goods involved in this controversy were at no time lost except insofar as they were not available to the consignee on his own terms. To this we might add the observation that there is ample evidence in this report to rebut any presumptions with respect to the reason for the non-delivery of the shipments.

2. The Railway Express Agency as the initial carrier is not encumbered with the responsibilities imposed by the Carmack Amendment. *U. S. Code Title* 49, §20. The provisions of this law are limited in operation to transportation within the confines of the United States. Whatever rights parties have in this situation are those given by the common law, and the common law does not make the initial carrier responsible for the default or neglect of a connecting carrier except when the carrier expressly undertakes to see the shipment through to its ultimate destination.

Except where the Carmack Amendment is applicable, the Massachusetts rule is that each carrier is a carrier over its own lines and a forwarding agent at its terminus at which point its liability as a common carrier ceases. In the absence of any arrangement to the contrary this is presumptively the arrangement. *Nutting v. Connecticut River Road*, 1 Gray 502. *Bullock v. Haverhill & Boston Dispatch Co.*, 187 Mass. 91.

In the cause in issue the law confers no rights against the initial carrier which had executed its contract of carriage when it delivered the shipments in good order to Lamsa Airlines at the Mexican border.

The shipper has stressed an agreement executed by Railway Express Agency and Lamsa Airlines on May 18, 1949 in which the parties agree to indemnify each other "for any and all liability and expense arising out of loss or delay of, or damage to, goods or property to which an airwaybill of Airline relates while such goods or property are in its possession —".

This agreement provides only for the indemnification of the parties to the agreement and in no manner affects the legal responsibility of its signatories to shippers or consignees. *Corrigan Transit Co. v. Sanitary Dist. of Chicago*, 137 Fed. 851.

Despite the vast and prodigious accumulation of immaterial and irrelevant evidence with which this report is encumbered, and which tends to obscure the true issue, there can be no question with respect to the proper performance of the contracts of carriage by both Railway Express Agency and Lamsa Airlines. Nor can there be any question that Lamsa Airlines kept both the shipper and consignee informed of the status of the shipments and did everything that could be reasonably expected in order to perform its contract. As for the delay while the goods were in Mexican customs, the shipper agreed to exonerate the carrier from any responsibility for same. It does not lie in its power to now claim damages.

No argument having been directed to the questions posed by the exclusion of evidence, the claims with respect to same are treated as waived.

*Report Dismissed.*

Slater & Goldman, for the plaintiff.

Austin M. Pinkham, for the defendant.